## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## CASE NO.:

MELISSA     WIGHT     &
SAMANTHA   WIGHT,  Florida
domiciliaries,

     Plaintiffs,

v.

DANIEL BLUMAN, individually,
and  DANIEL  BLUMAN,  LLC,
domiciliaries of New York,

     Defendants,

_____ /

## **COMPLAINT**

Plaintiffs Melissa Wight ("Mrs. Wight") and Samantha Wight ("Ms. Wight," the two together "Plaintiffs'), by and through undersigned counsel, bring this Complaint against Defendants Daniel Bluman ("Mr. Bluman"), individually, and Daniel Bluman, LLC (together, "Defendants"), and alleges as follows:

### I.     **JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over the claims in this action based on 28 U.S.C. § 1332(a), as the parties are completely diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2. Venue is proper under 28 U.S.C. § 1391(b)(2)-(3) as a substantial part of the events or omissions giving rise to the claims occurred, and a substantial part of property that is the subject of the action is situated, in the Southern District of Florida.

3. Defendants are subject to the Court's personal jurisdiction with respect to this action. Many of Defendants' tortious acts and transactions giving rise to the claims occurred in

<u>Wight v. Bluman</u>
Case No.:
Complaint
Page 2

Florida.  Further, Defendant Mr. Bluman operates, conducts, engages in, and carries on a business venture in Florida and has an office in Florida.  Mr. Bluman manages, owns and operates Daniel Bluman, LLC.  Daniel Bluman, LLC is registered to do business in Florida as a Florida Limited Liability Company with Daniel Bluman as its sole member.

## II.    **PARTIES**

4.    Mr. Bluman is a resident and domiciliary of New York, over the age of eighteen. Mr. Bluman is a professional horse rider and trainer, and he acted as Plaintiffs' agent and broker in purchasing a horse named Conbelleza for Plaintiffs. Mr. Bluman is in the business of buying, training, riding and selling horses.  Mr. Bluman was also the professional horse trainer for Ms. Wight.

5.    Daniel Bluman, LLC ("Bluman, LLC," Mr. Bluman and Bluman, LLC together "Defendants" or "Bluman") is registered to do business in Florida as a Florida Limited Liability Company.  Daniel Bluman is its registered agent, manager and sole member.  In that, for purposes of determining diversity jurisdiction, the domicile of a single member limited liability corporation is the citizenship of its member, Bluman, LLC is domiciled in the State of New York.

6.    Mrs. Wight is a resident and domiciliary of Florida, who is over the age of eighteen. Mrs. Wight is Ms. Wight's mother.  Mrs. Wight attempted to purchase Conbelleza for Ms. Wight to compete as a jumping horse at the international Grand Prix level.

7.    Ms. Wight is a resident and domiciliary of Florida, over the age of eighteen, who competes in equestrian show jumping.  Ms. Wight is the daughter of Mrs. Wight.

## III.    **INTRODUCTION**

8.    This case concerns a web of fraudulent and negligent acts by Defendants, Plaintiffs' agent and broker, for the attempted purchase of Conbelleza.  As Plaintiffs' agent and broker,

Defendants made fraudulent representations and failed to carry out their responsibilities to Plaintiffs regarding Conbelleza's health, ability and suitability to compete as an international Grand Prix showjumping horse. To fuel the fraudulent representations, Defendants vouched for the competence of Conbelleza by selecting a veterinarian to perform the pre-purchase exam ("PPE") on Conbelleza. However, when Conbelleza arrived in Wellington, Florida, Conbelleza was severely lame. The PPE report made no mention of a chronic injury suffered by Conbelleza, which should have been detected by Defendants. As a result, Conbelleza is unable to compete as a Grand Prix show jumping horse.

9. As Plaintiffs' agent and broker, Defendants reposed trust in Defendants, which trust Defendants accepted. Defendants therefore owed Plaintiffs the fiduciary duties of loyalty and due care. Defendants' fraudulent misrepresentations and breaches of the duties of loyalty and due care, among other things, have caused Plaintiffs to incur and continue to incur substantial damage.

## IV.   GENERAL ALLEGATIONS

### A.   PURCHASE OF CONBELLEZA

10. Defendants fraudulently induced Plaintiffs to purchase Conbelleza, a 9-year old bay mare, for the purchase price of $1,200,000.00. *See* Exhibit 1, Bill of Sale, signed by Berthol; Exhibit 2, Bill of Sale signed by Doyen.

11. Defendants acted as Plaintiffs' agent and broker for the purchase of Conbelleza and received a 10% commission in the amount of $120,000 on the sale. *See* Exhibit 3, Bluman Invoice.

12. The purchase price for Conbelleza included $600,000.00 directly paid to Defendants by Mrs. Wight on behalf of Plaintiffs and transferring ownership of a stallion owned by Mrs. Wight, named Imagine VD Hermitage, valued at $600,000.00, to the sellers of Conbelleza. *See* Exhibits 1, 2.

Wight v. Bluman
Case No.:
Complaint
Page 4

13.     Through fraudulent misrepresentations and improper Bills of Sale, Defendants have

unlawfully procured $600,000.00 from Plaintiffs.

**B.     FRAUDULENT REPRESENTATIONS ABOUT CONBELLEZA TO PLAINTIFFS**

14.     In July 2019, Defendants advised Plaintiffs that Ms. Wight needed a new horse to

compete at the next level.  Defendants outlined and specified the requirements for such a horse to

Plaintiffs, and Plaintiffs agreed to Defendants' specifications for a new horse for Ms. Wight to

compete.  Plaintiffs trusted Defendants as their fiduciaries and brokers to select a suitable horse

for Ms. Wight.  The requirements which Defendants specified and to which Plaintiffs agreed were

that the horse could enable Ms. Wight to compete at a higher level.  The horse was to be an easy

addition for Ms. Wight to compete; one that was easy to learn; a horse that did not spook; a horse

that had no quirks or issues; a horse that was healthy and without chronic injury; a horse without

abnormalities; a horse that was not lame; a horse that could compete as a show jumping horse at

the international Grand Prix level.

15.     Plaintiffs trusted Defendants to select a suitable and sound show jumping horse for

Ms. Wight because Defendants were not only their agent and broker, but also Ms. Wight's

professional horse trainer for many years.  In addition, Mr. Bluman was a close family friend of

Plaintiffs.  He has known Plaintiffs for years and has, along with this wife, brother and cousin,

vacationed with Plaintiffs several times and has celebrated holidays, such as Thanksgiving, with

Plaintiffs.

16.     Mr. Bluman is a highly experienced equestrian trainer, rider and broker.

17.     Defendants defined, and therefore thoroughly understood, Plaintiffs' requirements

for a horse, as well as the purpose for which the horse would be used—a career in international

Grand Prix show jumping.

Wight v. Bluman
Case No.:
Complaint
Page 5

18.     Plaintiffs were relying on Defendants' expertise and superior knowledge of horses in recommending a horse that would meet Plaintiffs' requirements and purpose, which were outlined by Defendants and to which Plaintiffs agreed upon Defendant's advice.

19.     From July 2019 to the end of August 2019, Defendants fraudulently induced Plaintiffs to purchase Conbelleza for Ms. Wight to compete in international Grand Prix show jumping competitions by repeatedly vouching for Conbelleza's health, soundness and suitability as an international Grand Prix show jumping horse.

20.     Defendants represented that Conbelleza was a healthy horse, with no injury or abnormalities, a competent and sound horse for international Grand Prix show jumping for Ms. Wight to compete, a horse that had no issues or lameness; and a horse that could compete as a career international Grand Prix show jumping horse.  Specifically, and without limitation, on or about July 31, 2019, Defendants represented to Plaintiffs in direct oral communication that Conbelleza was sufficiently healthy and strong to compete at the international Grand Prix level immediately upon the horse's delivery.

21.     Defendants' representations intended to and did induce Plaintiffs to believe that Conbelleza would be a healthy, suitable and sound horse for Ms. Wight to compete as an international Grand Prix show jumping horse.

**C.      BASED ON THE MISREPRESENTATIONS, PLAINTIFFS OFFERED TO BUY CONBELLEZA**

22.     Based on the representations about Conbelleza by Defendants, Plaintiffs decided to offer to buy Conbelleza.

23.     Plaintiffs would not have made an offer to purchase Conbelleza but for the fraudulent statements and misrepresentations about Conbelleza made by Defendants.

Wight v. Bluman
Case No.:
Complaint
Page 6

24.     Plaintiffs agreed to purchase Conbelleza for $1,200,000.00, subject to a literally perfect pre-purchase veterinary examination.

**D.     PRE-PURCHASE EXAMINATION, EXECUTION OF BILLS OF SALE & TRANSFER OF PURCHASE MONEY**

25.     Plaintiffs paid for a pre-purchase veterinary examination on Conbelleza.

26.     As Plaintiffs' fiduciary and broker, Defendants selected and vouched for the competence of the Belgian veterinarian, Dr. Gaudin, to perform the PPE on Conbelleza.  Mr. Bluman was the only person who had any contact with the sellers of Conbelleza and the veterinarian.

27.     No PPE reports sent to Plaintiffs showed any significant issues with Conbelleza. Specifically, the PPE report did not mention any chronic injury to Conbelleza's right front ODSL.

28.     Because Plaintiffs were advised by Defendants that there were no medical concerns about Conbelleza, Plaintiffs offered to purchase Conbelleza.

29.     Defendants submitted two bills of sale for Conbelleza, dated August 8, 2019, which came from two different alleged owners.  *See* Exhibits 1, 2.  One Bill of Sale was signed by a Philipee Berthol as "owner," with the handwritten note "50%."  *Id.*  The other Bill of Sale was signed by Giles Doyen as "owner," with no additional handwritten information. *Id.*

30.     The Bills of Sale read as follows:

<u>Wight v. Bluman</u>
Case No.:
Complaint
Page 7

## BILL OF SALE

**NAME OF HORSE: "CONBELLEZA"**

**OWNER: "Philippe Berthol"**

**PURCHASER:**       **"Melissa Wight"**

Owner hereby sells, transfers, and assigns to Purchaser interest of **"CONBELLEZA"**, a 9-year-old bay mare by Conthargos

Owner warrants that it is the lawful owner in every respect of the described Horse and that the Horse is free and clear of all liens, security agreements, encumbrances, claims, and demands of any kind whatsoever.

The purchase price of the Horse **is $1,200,000.00** as Follows:

1) $600,000.00 in US Dollars

2) Receiving full ownership of "**IMAGINE VD HERMITAGE**" valued at $600,000.00

As the person signing below on behalf of the Owner, I hereby confirm that I am the lawful Owner of this Horse or the Owner's duly authorized agent, and I am authorized to convey legal title to the horse pursuant to this Bill of Sale.

Date: 8 / 8 /          , 2019          By: *Philippe BERTHOL*
                                                                        *50 %*
                                                                        Owner or Duly Authorized Agent of Owner

                                                                By: _____

                                                                        Purchaser

Wight v. Bluman
Case No.:
Complaint
Page 8

## BILL OF SALE

**NAME OF HORSE: "CONBELLEZA"**

**OWNER: "Gilles DOYEN"**

**PURCHASER:**     **"Melissa Wight"**

Owner hereby sells, transfers, and assigns to Purchaser interest of **"CONBELLEZA"**, a 9-year-old bay mare by Conthargos

Owner warrants that it is the lawful owner in every respect of the described Horse and that the Horse is free and clear of all liens, security agreements, encumbrances, claims, and demands of any kind whatsoever.

The purchase price of the Horse **is $1,200,000.00** as Follows:

  1)  $600,000.00 in US Dollars

  2)  Receiving full ownership of **"IMAGINE VD HERMITAGE"** valued at $600,000.00

As the person signing below on behalf of the Owner, I hereby confirm that I am the lawful Owner of this Horse or the Owner's duly authorized agent, and I am authorized to convey legal title to the horse pursuant to this Bill of Sale.

Date: _August 8_, 2019        By: _____ G. Doyen
                                        Owner or Duly Authorized Agent of Owner

                                 By: _____

                                        Purchaser

31.     On August 18, 2019, at Defendants' insistence, Mrs. Wight sent Bluman, LLC two checks, one in the amount of $400,000.00 and one in the amount of $200,000.00, for the purchase of Conbelleza.

32.     As part of the purchase price, Mrs. Wight transferred ownership of her stallion, Imagine VD Hermitage, valued at $600,000.00 to the alleged sellers of Conbelleza, Mr. Berthold and Mr. Doyen.

33.     On August 31, 2019, Daniel Bluman, LLC invoiced Team Wight/Ms. Wight for a 10% commission for the purchase of Conbelleza in the amount of $120,000.00.  *See* Exhibit 3.

34.     Plaintiffs paid the $120,000.00 commission to Defendants in the form of a check in the amount of $48,000.00 and the use of stalls on Plaintiffs' property for a period of time valued at $72,000.00.

35.     Plaintiffs further paid for all shipping, quarantine and veterinary expenses associated with the purchase of Conbelleza.

36.     Plaintiffs would not have sent the funds directly to Defendants, transferred Mrs. Wight's ownership of Imagine VD Hermitage to Mr. Berthold and Mr. Doyen, paid the commission, paid for a PPE and paid for shipping and quarantine of Conbelleza but for the fraudulent statements and misrepresentations about Conbelleza by Defendants.

### E.     PLAINTIFFS ARE ALERTED TO PROBLEMS WITH CONBELLEZA

37.     On October 10, 2019, Conbelleza entered quarantine in Brewster, New York. Conbelleza left quarantine on October 25, 2019 and arrived in Wellington, Florida on October 29, 2019.

38.     When Conbelleza arrived in Wellington, Florida on October 29, 2019, Plaintiffs became aware that she was severely lame and therefore could not be considered even serviceably sound.

39.     After arriving in Florida, separate veterinarian exams were performed on Conbelleza by Dr. Gomez and Dr. Hutton, with reports issued on November 7, 2019 and December 3, 2019.  Both veterinarians identified chronic injury to Conbelleza's right front ODSL that caused her lameness, and which prevented her from competing at a Grand Prix level.

40.     Dr. Gomez reported the following:

1.      A horse with this finding has an increased risk of injury compared to a normal horse. The athletic ability of this horse could be compromised as a result of the chronic injury to the right front lateral oblique sesamoidean ligament.

2.      The ability to resell the horse is compromised with this finding and could be a problem for future Pre-Purchase exams.

41.      Both Dr. Hutton and Dr. Gomez observed that the PPE report issued by Dr. Gaudin, the Belgian veterinarian selected by Defendants, made no mention of the chronic injury to Conbelleza's right front ODSL.

42.      This abnormality would have been observed in the visual observation phase of the PPE if a simple flexion test had been performed on all of Conbelleza's legs.  However, no flexion testing was ever performed on in the injured leg, at least not on the PPE videos sent by Defendants to Plaintiffs,.  Interestingly, on the PPE videos sent to Plaintiffs by Defendants, only a right hind flexion test was performed on Conbelleza.  Further, Conbelleza was never trotted to the left on the PPE videos, which would have revealed the lameness.

43.      These serious omissions from the ordinary standard of care known to veterinarians, riders and trainers was or should have been observed by Defendants and should have been reported to Plaintiffs when Defendants observed the PPE videos. Had Plaintiffs known of Conbelleza's chronic condition, Plaintiffs would never have purchased Conbelleza.

F.      **DEFENDANTS ACKNOWLEDGE CONBELLEZA HAS PROBLEMS**

44.      After the separate veterinarian exams were performed on Conbelleza by Dr. Gomez and Dr. Hutton, which identified Conbelleza's chronic injury that caused her lameness and prevented her from competing at the Grand Prix level, Plaintiffs confronted Defendants with Conbelleza's chronic condition.

45.      Defendants acknowledged Conbelleza's condition, but Defendants claimed that

they were going to sue Dr. Gaudin for the $600,000.00 cash payment owed to Plaintiffs.

46.     No lawsuit against Dr. Gaudin has been filed, and Plaintiffs' money has not been returned.

**G.      PLAINTIFFS ADVISE DEFENDANTS THAT THEY WANT TO RETURN CONBELLEZA DUE TO DEFENDANTS' MISREPRESENTATIONS**

47.     In December 2019, Plaintiffs advised Defendants that Conbelleza should be returned.  Bluman, however, stated that "[n]obody would take her back."

48.     To cover Defendants' misdeed, Defendants attempted to convince Plaintiffs that Conbelleza's chronic condition could be managed and she could be competed at the international Grand Prix level.

49.     Bluman questioned Ms. Wight, stating  "[w]hy not use our expertise?" in managing Conbelleza's chronic condition.

50.     Plaintiffs rejected Defendants' offer to manage Conbelleza. Plaintiffs explained that Ms. Wight did not want a horse like Conbelleza to manage, and that Ms. Wight and Mr. Bluman are "not the same," as she is not a professional who has been to the Olympics like Mr. Bluman.

51.     Plaintiffs further informed Defendants that they were never told by Defendants about Conbelleza's chronic condition.

52.     Conbelleza was never going to be able to compete at the Grand Prix level with the chronic injury to her right front ODSL.  Conbelleza's chronic injury to her right front ODSL causes her lameness and prevents her from competing at the Grand Prix level.

53.     Pursuant to two additional veterinarian examinations performed by Drs. Varela and Belden in July of 2020, Dr.'s Belden and Varela both confirmed the chronic injury to Conbelleza's

Wight v. Bluman
Case No.:
Complaint
Page 12

right front ODSL.

54.     Dr. Varela's report confirmed that Conbelleza's injury would "highly affect the performance and career [of Conbelleza] as a jumping horse," and that "this chronic lesion will affect the resale value of the mare even if temporary soundness is achieved."

**H.      DEFENDANTS WRONGFULLY REFUSE TO RETURN THE PURCHASE PRICE MONEY IN THE AMOUNT OF $600,000.00 TO PLAINTIFFS**

55.     Due to Defendants' fraudulent misrepresentations, Plaintiffs have incurred and continue to incur substantial injury.

56.     Defendants' own actions demonstrate that Plaintiffs have been wronged.  After Defendants acknowledged Conbelleza's chronic condition and were advised that Plaintiffs wanted to return Conbelleza, Bluman returned the cash portion of the commission paid ($48,000.00) to Plaintiffs and gave Plaintiffs a $12,000.00 credit toward an existing invoice from Defendants to Plaintiffs for services Defendants had rendered them.  Defendants, however, never paid Plaintiffs the remaining $60,000.00 for stalls Defendants had used on Plaintiffs' property.  Further, Bluman facilitated the return of Mrs. Wight's stallion, valued at $600,000.00.

57.     Regardless, Defendants have refused, without basis, to return the $600,000.000 to Plaintiffs that they paid for Conbelleza.

58.     Rather than returning the $600,000.000, Defendants attempted to convince Plaintiffs to recoup the purchase money by accepting half ownership with Defendants in two horses Defendants claimed to be worth $300,000.00 each.

59.     To this end, at Defendants' insistence, on January 23, 2020 and February 5, 2020, Defendants' undisclosed friend, Simon Delestre, executed papers purporting to transfer to Mrs. Wight half ownership in two horses named Chabela and Blanca Nieves (the "Two Horses").  *See*

Wight v. Bluman
Case No.:
Complaint
Page 13

Exhibit 4, Chabella, Exhibit 5, Blanca Nieves.

60.     Plaintiffs never wanted the Two Horses.

61.     Further, the Two Horses have no value to Plaintiffs, as no vetting information was provided.  Plaintiffs, further, never had possession of the Two Horses, nor was either of the Two Horses ever registered to Plaintiffs.  In addition, one horse broke a leg while in Defendants' care.

62.     Regardless, Plaintiffs requested that Defendants sell Mrs. Wight's purported share of the Two Horses or buy her out, but Defendants refused, claiming the Two Horses were not worth $300,000.00 a piece at the time.

63.     Even if the Two Horses had been worth $300,000 a piece at the time, such an amount would only have accounted for half of the $600,000.00 Plaintiffs are owed.

64.     Further, unbeknownst to Plaintiffs, one of the purported sellers of Conbelleza was Defendants' friend, Mr. Simon Delestre.   Defendants were the only ones who had any contact with the sellers of Conbelleza, and the friendship was never disclosed to Plaintiffs.

65.     Defendants' friend, Mr. Delestre, apparently had ownership interest in Conbelleza, because when the stallion was returned to Mrs. Wight, the "Statement of Transfer of Ownership" was signed by Mr. Delestre, as "current owner."  *See* Exhibit 6, Transfer of Ownership of Imagine Van De Hermitage.

66.     Mrs. Wight did not transfer her stallion to Mr. Delestre.  The stallion was transferred to Mr. Berthol and Mr. Doyen.  *See* Exhibits 1, 2.

67.     Defendants had a duty to explain to Plaintiffs the relationships among Mr. Bluman, Mr. Berthol, Mr. Doyen and Mr. Delestre, and the discrepancies between the Bills of Sale and the transfer papers, but Defendants never did.

68.     All conditions precedent to the filing of this lawsuit have been satisfied, have

Wight v. Bluman
Case No.:
Complaint
Page 14

occurred or have been otherwise waived.

## COUNT I
## FRAUD

69.     Paragraphs 1-68 are incorporated herein.

70.     This count is brought by Plaintiffs against Defendants.

71.     Defendants intentionally made false statements of material fact about Conbelleza to Plaintiffs, including but not limited to statements regarding Conbelleza's lack of known defects or issues, Conbelleza's ability and suitability for Ms. Wight to compete as an international Grand Prix show jumping horse and Conbelleza's status as a healthy horse with no injuries, medical issues or abnormalities.

72.     Defendants knew the statements were false when made, or knowingly made the statements without knowledge of their truth or falsity.

73.     In making the false statements, Defendants intended that Plaintiffs would rely on the false statements and that they would induce Plaintiffs to purchase Conbelleza.

74.     Plaintiffs reasonably relied on the false statements to their detriment.

75.     Plaintiffs and Defendants had a close personal relationship, pursuant to which Defendants knew Plaintiffs trusted Defendants as their fiduciary and broker and as Ms. Wight's professional horse trainer.  Defendants used that close personal relationship to induce Plaintiffs to buy Conbelleza.

76.     As a result, Plaintiffs have suffered, among other things, loss of the purchase monies of $600,000.00 and unreturned commission, for Conbelleza.  Plaintiffs have incurred other costs, including, but not limited to, the cost of the pre-purchase veterinary exam, shipping, quarantine, additional veterinary exams and care after quarantine, board, feed and general

<u>Wight v. Bluman</u>
Case No.:
Complaint
Page 15

maintenance of Conbelleza and have to bear the cost and expense of litigation and other damage

that would not exist but for the fraudulent misrepresentations of Defendants.

**WHEREFORE** Plaintiffs demand judgment for damages in their favor against

Defendants, including, but not limited to, the return of the $600,000.00 purchase price and the

unreturned portion of the companion commission, other incidental and consequential damages,

punitive damages, prejudgment and post-judgment interest and such further relief as requested

below and as this Court may deem just and proper.

## COUNT II
## <u>NEGLIGENT MISREPRESENTATION</u>

77.     Paragraphs 1-68 are incorporated herein.

78.     This Count is brought by Plaintiffs against Defendants.

79.     Defendants made numerous false statements of material facts about Conbelleza to

Plaintiffs, including but not limited to statements regarding Conbelleza's lack of known defects or

issues, Conbelleza's ability and suitability for Ms. Wight to compete as an international Grand Prix

show jumping horse and Conbelleza's status as a healthy horse with no injuries, medical issues or

abnormalities.

80.     Defendants represented that Conbelleza was a healthy horse, with no abnormalities

or medical issues, and that Ms. Wight could compete Conbelleza as an international Grand Prix

show jumping horse.

81.      Defendants omitted that Conbelleza has a chronic injury and is unable to compete

as a Grand Prix show jumping horse.

82.     Defendants omitted that Conbelleza is lame and can never be competed as a Grand

Prix show jumping horse in any capacity whatever.

Wight v. Bluman
Case No.:
Complaint
Page 16

83.    Defendants made numerous false statements of material fact to Plaintiffs that Conbelleza would be an easy addition, had no quirks and never stops.

84.    Defendants knew that Plaintiffs trusted them as their fiduciary and broker, and as Ms. Wight's professional horse trainer to select a suitable and healthy jumping horse for Ms. Wight to compete at the international Grand Prix level.

85.    Defendants used that relationship to induce Plaintiffs to buy Conbelleza

86.    Defendants were negligent in making statements about Conbelleza to Plaintiffs because Defendants should have known the statements were false.

87.    Defendants vouched for the competency of Conbelleza by selecting a veterinarian to perform the PPE on Conbelleza.  The PPE made no mention of a chronic injury suffered by Conbelleza, which should have been detected by Defendants.  Defendants should have observed on the PPE videos that a flexion test was not performed on all legs.  Had a flexion test been performed on Conbelleza's right front leg, the abnormality would have been seen.

88.    In making these statements, Defendants expected Plaintiffs to rely on the statements.

89.    Plaintiffs justifiably relied on the false statements.

90.    As a result, Plaintiffs have suffered, among other things, loss of the purchase monies of $600,000.00 and unreturned commission, for Conbelleza.  Plaintiffs have incurred other costs, including, but not limited to, the cost of the pre-purchase veterinary exam, shipping, quarantine, additional veterinary exams and care after quarantine, board, feed and general maintenance of Conbelleza and have to bear the cost and expense of litigation and other damage that would not exist but for the negligent misrepresentations of Defendants.

**WHEREFORE** Plaintiffs demand judgment for damages in their favor against

<u>Wight v. Bluman</u>
Case No.:
Complaint
Page 17

Defendants, including, but not limited to, the return of the $600,000.00 purchase price and the

unreturned portion of the companion commission, other incidental and consequential damages,

prejudgment and post-judgment interest and such further relief as requested below and as this

Court may deem just and proper.

## COUNT III
## BREACH OF DUTY OF LOYALTY

91.     Plaintiffs incorporate paragraphs 1-68 herein.

92.     This Count is brought by Plaintiffs against Defendants.

93.     Plaintiffs and Defendants share a relationship whereby Plaintiffs reposed trust and

confidence in Defendants, and Defendants undertook such trust and assumed a duty of loyalty to

Plaintiffs.

94.     As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of

loyalty not to engage in disloyal acts.  Defendants were aware that Plaintiffs trusted them as their

agent, broker, and fiduciary, and as Ms. Wight's professional horse trainer to select a suitable

jumping horse for Ms. Wight to compete at the Grand Prix level.

95.     As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of

loyalty to Plaintiffs to explain Defendants' relationship with the purported sellers of Conbelleza

and the relationship with Mr. Delestre.

96.     As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of

loyalty to select a suitable horse for Ms. Wight to compete at the Grand Prix level.

97.     As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of

loyalty to select a competent veterinarian to perform a comprehensive flexion test on Conbelleza

to determine whether Conbelleza had any abnormalities.

98.     As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of loyalty to observe the PPE videos to determine whether a comprehensive flexion test was performed.

99.     Defendants breached their duty of loyalty to Plaintiffs by, among other things, failing to deal with Plaintiffs in utmost good faith and solely for Plaintiffs' benefit in finding a suitable horse for Ms. Wight to compete at the Grand Prix level.

100.    Defendants intentionally made numerous false statements of material facts about Conbelleza to Plaintiffs, including statements regarding Conbelleza's soundness and suitability for Ms. Wight to compete at the Grand Prix level, Conbelleza's lack of known defects or issues and Conbelleza's lack of medical issues, abnormalities, chronic injury or lameness.

101.    Defendants further breached their duty of loyalty to Plaintiffs by, among other things, failing to disclose and explain the relationship between Mr. Delestre and Defendants, and the relationship among Mr. Delestre, Mr. Bluman, Mr. Berthold and Mr. Doyen.

102.    Defendants breached their duty of loyalty by failing to disclose the discrepancies between the Bills of Sale and the transfer papers.

103.    Defendants breached their duty of loyalty by failing to observe that a flexion test had not been performed on all of Conbelleza's legs on the PPE, which would have easily discovered an abnormality on Conbelleza's right front leg.

104.    Defendants' breach of this duty of loyalty directly and proximately caused damages to Plaintiffs.

105.    As a result, Plaintiffs have suffered, among other things, loss of the purchase monies of $600,000.00 and unreturned commission, for Conbelleza.  Plaintiffs have incurred other costs, including, but not limited to, the cost of the pre-purchase veterinary exam, shipping,

<u>Wight v. Bluman</u>
Case No.:
Complaint
Page 19

quarantine, additional veterinary exams and care after quarantine, board, feed and general maintenance of Conbelleza and have to bear the cost and expense of litigation and other damage that would not exist but for Defendants' breaches of the duty of loyalty.

106.    Further, Defendants' conduct was willful, malicious and fraudulent and warrants imposition of punitive damages as well as all other appropriate relief.

**WHEREFORE** Plaintiffs demand judgment for damages in their favor against Defendants, including, but not limited to, the return of the $600,000.00 purchase price and the unreturned portion of the companion commission, other incidental and consequential damages, punitive damages, prejudgment and post-judgment interest and such further relief as requested below and as this Court may deem just and proper.

**COUNT IV**
**BREACH OF DUTY OF CARE**

107.    Plaintiffs incorporate paragraphs 1-68 herein.

108.    This Count is brought by Plaintiffs against Defendants.

109.    Plaintiffs and Defendants share a relationship whereby Plaintiffs reposed trust and confidence in Defendants, and Defendants undertook such trust and assumed a duty of care to Plaintiffs.

110.    As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of care.  Defendants were aware that Plaintiffs trusted Defendants as agent, broker, and fiduciary and as Ms. Wight's professional horse trainer to select a suitable jumping horse for Ms. Wight to compete at the Grand Prix level.

111.    As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of care to Plaintiffs to explain Defendants' relationship with the purported sellers of Conbelleza and

Wight v. Bluman
Case No.:
Complaint
Page 20

Defendants' relationship with Mr. Delestre.

112.    As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of care to select a suitable and healthy international Grand Prix show jumping horse for Ms. Wight.

113.    As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of care to select a competent veterinarian to perform a flexion test on all of Conbelleza's legs to determine whether Conbelleza had any abnormalities.

114.    As agent, broker, and fiduciary for Plaintiffs, Defendants owed Plaintiffs a duty of care to observe the PPE videos to determine whether a flexion test was performed on all of Conbelleza's legs.

115.    Defendants breached his duty of care to Plaintiffs by, among other things, failing to deal with Plaintiffs in utmost good faith and solely for Plaintiffs' benefit in finding a suitable horse for Ms. Wight to compete at the Grand Prix level.

116.    Defendants made numerous false statements of material facts about Conbelleza, including statements regarding Conbelleza's soundness and suitability for Ms. Wight, Conbelleza's lack of known defects or issues and Conbelleza's ability to compete as an international Grand Prix show jumping horse.

117.    Defendants breached their duty of care by failing to observe that a flexion test had not been performed on all of Conbelleza's legs on the PPE, which would have easily discovered an abnormality on Conbelleza's right front leg.

118.    Defendants' breach of the duty of care directly and proximately caused damages to Plaintiffs.

119.    As a result, Plaintiffs have suffered, among other things, loss of the purchase monies of $600,000.00 and unreturned commission, for Conbelleza.  Plaintiffs have incurred other

Wight v. Bluman
Case No.:
Complaint
Page 21

costs, including, but not limited to, the cost of the pre-purchase veterinary exam, shipping, quarantine, additional veterinary exams and care after quarantine, board, feed and general maintenance of Conbelleza and have to bear the cost and expense of litigation and other damage that would not exist but for Defendants' breaches of the duty of due care.

     **WHEREFORE** Plaintiffs demand judgment for damages in their favor against Defendants, including, but not limited to, the return of the $600,000.00 purchase price and the unreturned portion of the companion commission, other incidental and consequential damages, prejudgment and post-judgment interest and such further relief as requested below and as this Court may deem just and proper.

## COUNT V
## VIOLATION OF FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

120.    Paragraphs 1-68 are incorporated herein.

121.    This Count is brought by Plaintiffs against Defendants.

122.    Defendants used various devices, including (without limitation) the close fiduciary relationship with Plaintiffs as their broker and agent, and with Ms. Wight as her professional horse trainer, to fraudulently induce Plaintiffs that Conbelleza was a suitable and healthy horse for Ms. Wight to compete as an international Grand Prix showjumping horse, so Plaintiffs would send $600,000.00 directly to Defendants and transfer Mrs. Wight's stallion, valued at $600,000.00, to the purported sellers of Conbelleza.

123.    Defendants' actions constituted a trade or transaction within the meaning of § 501.203, Fla. Stat.

124.    Defendants failed to disclose the true condition of Conbelleza and the hidden friendship with Mr. Delestre.

Wight v. Bluman
Case No.:
Complaint
Page 22

125.    Defendants' actions and wrongful conduct constituted "unconscionable acts or practices" and/or "unfair trade practices" within the meaning of § 501.204, Fla. Stat.

126.    Had Defendants properly disclosed the true condition of Conbelleza and the hidden friendship with Mr. Delestre, Plaintiffs would not have transferred the purchase money to Defendants.

127.    Defendants have violated Florida's Unfair and Deceptive Trade Practices Act, entitling Plaintiffs to actual damages and reasonable attorneys' fees and costs.

128.    As a result of Defendants' deceptive actions, Plaintiffs have suffered, among other things, actual damages in the amount of $600,000.00 and the unreturned portion of the commission.

    **WHEREFORE** Plaintiffs demand damages in their favor against Defendants for violation of the Florida Deceptive Unfair Trade Practices Act, actual damages (the difference in value between the horse Plaintiffs received and the horse for which Plaintiffs bargained), prejudgment and post-judgment interest, attorneys' fees and costs as permitted under § 501.2105, Fla. Stat. and such further relief as requested below and as this Court may deem just and proper.

**COUNT VI**
**<u>BREACH OF CONTRACT</u>**

129.    Paragraphs 1-68 are incorporated herein.

130.    This Count is brought by Plaintiffs against Defendants.

131.    Defendants and Plaintiffs entered into a brokerage agreement whereby Defendants agreed to find a suitable and healthy horse for Ms. Wight to compete as an international Grand Prix show jumping horse.

132.    Defendants failed to perform their obligations pursuant to the brokerage agreement

<u>Wight v. Bluman</u>
Case No.:
Complaint
Page 23

and has materially breached the agreement by, among other things, failing to find a suitable and healthy horse for Ms. Wight to compete, failing to disclose Conbelleza had a chronic injury and was lame and failing to provide Plaintiffs with a sound international Grand Prix show jumping horse.

133.    Defendants have caused Plaintiffs damages as a result of the breach, including, but not limited to, direct, incidental and consequential damages.

**WHEREFORE** Plaintiffs demand damages in their favor against Defendants, including, but not limited to, the return of the $600,000.00 purchase price and the unreturned portion of the companion commission, incidental and consequential damages, prejudgment and post-judgment interest and such further relief as requested below and as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs request a trial by jury on all counts in the Complaint so triable.

Dated: September 17, 2020

Respectfully submitted,

GREENBERG TRAURIG, P.A.
777 S. Flagler Drive, Suite 300E
West Palm Beach, FL  33401
(561) 650-7922 Phone
(561) 838-8823 Fax

*s/ C. Wade Bowden*
C. WADE BOWDEN, Esq., B.C.S.
Fla. Bar No. 0090735
bowdenw@gtlaw.com
flservice@gtlaw.com
chalkleyt@glaw.com
*Counsel for Plaintiff*