**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO.: 9:20-cv-81688-REINHART**

MELISSA WIGHT and SAMANTHA
WIGHT, Florida domiciliaries,

      Plaintiffs,

v.

DANIEL BLUMAN, individually, and
DANIEL BLUMAN, LLC, domiciliaries
of New York,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR FEES AND COSTS RELATED TO FORENSIC**
**EXAMINATION OF BLUMAN PHONES PURSUANT TO D.E. 76,**
**AND FED. R. CIV. P. 37(C)**

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 2

Plaintiffs Melissa Wight and Samantha Wight ("Plaintiffs") move for fees and costs related to the forensic analysis of Defendant Daniel Bluman's ("Bluman") cell phones. On June 6, 2021, the Court ordered this forensic analysis following Bluman's assertion that the paucity of electronic information produced from his cell phones in response to Plaintiffs' discovery requests resulted from his systematic deletion of all electronic information from his phones as a routine "business practice."

The forensic analysis revealed the existence of 100's of non-deleted electronic messages on Bluman's cell phones that fall clearly within the scope of Plaintiffs' discovery requests to Defendants, many of which support the allegations and Counts of Plaintiffs' First Amended Complaint ("FAC"), but were never produced to Plaintiffs and would not have been produced but for the Court-ordered forensic examination. The existence of these 100's of electronic messages on his cell phones shows that ***Bluman gave false testimony in his sworn statement and his deposition*** by claiming that he deleted all messages "on a monthly basis" from his cell phones as a routine "business practice."

## I.    BACKGROUND AND STATEMENT OF PERTINENT FACTS

This case involves a pattern of fraud and breach of fiduciary duty by Bluman in connection with the sale of Conbelleza, a 9-year-old mare, to Plaintiffs.  Bluman was Samantha's trainer for 3 years, and during that time, continuously touted to Plaintiffs his education, training, and experience as an Olympic rider, elite trainer, and an expert broker of Grand Prix level horses. The Wights paid Bluman well for his services, to the tune of $300,000 per year (DE 42 at ¶¶ 17–21).

Samantha Wight is an accomplished young rider. In July 2019, when Samantha was 21 years old, Bluman convinced the Wights that she was ready to compete at the next level, in international Grand Prix events. Bluman advised the Wights that Samantha needed a new horse to

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 3

achieve that goal, and ultimately convinced them that Conbelleza was the perfect horse. The Wights placed their trust in Bluman as Samantha's trainer, and Bluman and the Wights ultimately agreed that he would be their sole and exclusive agent for the Conbelleza sale (*Id*. at ¶ 30–39).

As their agent, Bluman controlled every aspect of the purchase, and was the only point of contact with the sellers and the vets. Melissa and Samantha never had any contact with the sellers, or the vet who conducted the pre-purchase examination (*Id*. at ¶¶ 26, 30–39, 87). Bluman wanted to show the Wights that he could successfully broker the sale of a Grand Prix caliber horse for Samantha, and he wanted to keep his $300,000/year position as her trainer. He repeatedly touted Conbelleza to Samantha as a horse ready to compete in Grand Prix events upon delivery, and he worked on Samantha to convince Melissa to close the deal (*Id*. at ¶¶ 45–46, 52, 113, 132, 141).

In late August 2019, Melissa bought Conbelleza for $1,200,000 (by far the most expensive horse she had ever purchased for Samantha), and paid Bluman a 10% commission of $120,000 (*Id*. at ¶¶ 23–24). Unbeknownst to the Wights at the time, Bluman was working both sides of the deal, and received money as an undisclosed dual agent for the sellers, which was a direct violation of FLA. ADMIN. CODE R. 5H-26.003 and FDUTPA. (*Id*. at ¶¶ 143–147). Bluman's financial motivation to consummate the sale was obvious. As detailed in the First Amended Complaint ("FAC"), Bluman made a multitude of fraudulent misrepresentations and withheld critical information from Samantha and Melissa to ensure that the Conbelleza sale would go through (*Id*., *e.g*., ¶ 159 (a)–(q)). Had they known the truth, Plaintiffs would never have purchased the horse.

**A. Plaintiffs' Motion to Compel a Forensic Examination of Bluman's Cell Phones and The Court's April 1 and June 8, 2021 Orders**

Plaintiffs filed their motion to compel a forensic examination of Bluman's cell phones and supporting memorandum on February 18, 2021 (D.E. 44). Plaintiff's reply memorandum in

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 4

support of the motion was filed on March 9, 2021 (D.E. 53).  In those memoranda, Plaintiffs

demonstrated how Defendants, beginning with their responses to Plaintiffs' first set of document

requests served on January 12, 2021, obstructed Plaintiffs' legitimate discovery requests to hide

the truth – *i.e.*, that Bluman had been intentionally and systematically deleting from his cell phones

information relevant to Plaintiffs' causes of action after litigation had become foreseeable.

Recognizing the seriousness of the misconduct alleged, the Court, by Order of April 1,

2021, ordered Bluman to submit a sworn statement by April 19, 2021 providing information on

four topics related to his "standard business practice" of deleting electronic messages from his

phones (D.E. 57). Bluman submitted his sworn statement on April 14, 2021 (D.E. 58).

On June 8, 2021, the Court granted, in part, Plaintiffs' motion to compel, and the Court's

Order set out the parameters for a forensic examination of Bluman's cell phones by an independent

expert (D.E. 76).  In granting the motion, the Court observed that Plaintiffs sought "the forensic

examination because they assert[ed] Defendants (1) deleted relevant text and WhatsApp

communications with the overseas veterinarian and sellers pertaining to the sale of Conbelleza and

(2) have selectively produced certain screenshots with incomplete context." (*Id*. at 2).  Concerning

the payment of costs and fees for the examination, the Court ordered as follows:

> Plaintiffs shall pay for all fees and costs of hiring the independent
> expert at this time. However, the Court ***will determine*** at a later date
> whether costs and expenses should be apportioned or otherwise paid
> by Defendants. ***For instance, if the data recovered from Mr.***
> ***Bluman's cell phones contains data or documents responsive to***
> ***Plaintiffs' prior requests for production which Defendant***
> ***reasonably could have provided in the regular course of discovery***
> ***without a forensic examination***, the Court ***will revisit*** this issue of
> costs and consider charging Defendants for the fees and costs of the
> independent expert or imposing the fees and costs on the parties in
> a duly appropriate and apportioned manner.

(*Id*. at 10, ¶ 9) (emphasis added).

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 5

As the above-quoted passage plainly shows, the Court used mandatory language, "will determine," and "will revisit," to specifically reserve on the issue of apportionment of fees, costs, and expenses. The Court also provided an example of circumstances in which cost and fee shifting would be appropriate: "if the data recovered from Mr. Bluman's cell phones contains data or documents responsive to Plaintiffs' prior requests for production which Defendant reasonably could have provided in the regular course of discovery without a forensic examination" (*Id.*).

In opposing Plaintiffs' motion to compel, Defendants represented to the Court "that they have produced all discoverable information that is within their possession and control" (*Id.* at 2). This representation turned out to be ***false***. As we show below, the forensic examination uncovered 100's of electronic messages ***still present*** on Bluman's cell phones that are relevant to Plaintiffs' claims. These non-deleted messages fall within the scope of Plaintiffs' discovery requests served almost one year ago, but which have never been produced by Defendants to Plaintiffs in discovery.

### B. <u>Bluman Admits Spoliation at His Deposition</u>

Bluman was deposed in this case on August 16-17, 2021. Plaintiffs examined Bluman on the allegations of the FAC, as well as his April 14, 2021 sworn statement concerning his "regular practice" of deleting electronic information from his phones. In his sworn statement, Bluman asserted that he stopped deleting messages after being notified of this lawsuit, which was filed by Plaintiffs on September 17, 2020 (D.E. 58, ¶¶ 5(i) and 5(m)).

However, Bluman's sworn statement left out a critical fact -- that on August 13, 2020, more than a month before this lawsuit was filed, he received by email a letter from Plaintiffs' counsel setting forth some of Bluman's misconduct giving rise to the lawsuit; and demanding that he make restitution to the Plaintiffs (Ex. 1 hereto: Plaintiffs' Dep. Ex. 166). That letter contained the following instructions to Bluman concerning the preservation of evidence:

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 6

> Please be reminded that under governing law, you are required to take all appropriate measures to preserve and safeguard evidence, including electronically stored information, relating to this matter.  We urge you to immediately inform your employees, agents or other representatives that they, too, must refrain from deleting or destroying any documents, data and other information that might be relevant to this matter.  If you fail to comply with your obligations in this regard, Ms. Wight reserves her right to seek appropriate additional relief.

(*Id.* at 3).  At his deposition, Bluman admitted: (1) that he received Plaintiffs' demand letter by email on August 13, 2020; (2) that he read the letter when he received it; and (3) that he understood the above-quoted evidence preservation paragraph to mean that he could not "destroy any electronic data or delete it" from his phone (Ex. 2: Bluman 8/16/21 Tr. 63:9–67:17).

Bluman further admitted that he continued to delete electronic information from his phones until he was notified of this lawsuit, despite having received the August 13, 2021 demand letter over a month earlier (*Id.* 87:4–88:23).  Significantly, although the timeline included in paragraph 5 of Bluman's sworn statement refers to many events in the 2019–2020 timeframe, including the September 17, 2020 filing of this lawsuit, there is no mention of the August 13, 2020 date on which he received Plaintiffs' demand letter (*see* D.E. 58, ¶5 (a)–(m)).

Bluman further admitted at his deposition that the following categories of electronic information relevant to the FAC were deleted from his cell phones: (1) communications with Samantha Wight concerning Conbelleza; (2) communications with Conbelleza's seller Simon Delestre concerning the horse and her pre-purchase examination ("PPE"); and (3) videos of Conbelleza's PPE sent by Delestre to Bluman, including videos showing Conbelleza's lameness that Bluman had concealed from the Plaintiffs (Ex. 2: 8/16/21 Bluman Tr. 82:5–84:4, 110:5–8, 224:5–17, 232:11–24; D.E. 42 at ¶¶ 40–42, 45–46, 52, 56, 65–69, 72, 74, 82–86, 119).

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 7

## C.  Results of The Forensic Analysis of Bluman's Cell Phones

The forensic examination was carried out by CS Disco, an agreed-upon, independent expert. Initial review of the results of Disco's analysis show that ***Bluman was not truthful in his April 14, 2021 sworn statement and his deposition when he testified under penalty of perjury that he deleted all electronic information from his phones "on a monthly basis" up through the filing of this lawsuit as a routine "business practice."*** Contrary to Bluman's sworn testimony, Disco's forensic examination revealed the existence of ***100's of electronic messages still present on Bluman's phones*** that are relevant to Plaintiffs' claims, encompassed by Plaintiffs' discovery requests, and which have never been produced to Plaintiffs.  A sampling of some of the most damaging non-deleted electronic messages retrieved are shown in Exhibit 3, a chart reproducing these messages *verbatim*, along with the text of the discovery requests served by Plaintiffs to which they respond.[1]

Although Disco's examination did  identify several deleted files on Bluman's cell phones; they could not recover many of the deleted messages or determine when they were deleted.  Thus, we will never know what information Bluman actually deleted from his phones.

Disco's examination also uncovered voluminous non-deleted material still present on Bluman's cell phones: – there are 24,952 electronic documents  on Bluman's cell phones, amounting to 134,111 pages produced to Plaintiffs with production numbers DB000001– DB134,111.  The volume of non-deleted documents retrieved from Bluman's phones demonstrates Defendants' failure to comply with  their discovery obligations.   Defendants' counsel's representations to Plaintiffs in March of this year, and Bluman's April 14, 2021 sworn statement,

---

[1] The messages themselves, with Bates-numbered pages, are attached as Composite Exhibit 8.

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 8

both to the effect that Bluman deleted all electronic messages from his phone on a monthly basis as a "business practice" were not true. (D.E. 44-4 at page 5; D.E. 58).   Plaintiffs incurred significant costs and attorneys' fees in the motion practice leading to the Court-ordered forensic examination, in having the forensics conducted, and in having their counsel analyze the results. These non-deleted materials should have been produced when discovery was first requested.

While Disco retrieved 100's of relevant, non-deleted, and never-produced electronic messages from Bluman's cell phones, we will discuss below some of the most damning messages found in our initial analysis.  Each of these non-deleted messages is encompassed by Plaintiffs' discovery requests, and directly supports the allegations and claims against Defendants set out in the FAC.

### 1. Messages Confirming That Bluman Misrepresented to Samantha Wight That He Had Ridden Conbelleza and Determined That the Horse Was A Suitable Grand Prix Horse for Her

Among the allegations giving rise to Counts I–V of the FAC is the allegation that Bluman lied to Samantha Wight when he represented to her in a WhatsApp message sent on July 27, 2019 that he had ridden Conbelleza as an 8-year-old, and determined that the horse was a suitable Grand Prix horse for her (D.E. 42 at ¶¶ 43–51).  The FAC describes in detail the importance of a trainer like Mr. Bluman riding a Grand Prix level horse to determine its suitability for his student if the student is not available to ride the horse (*Id.*).  Since Samantha Wight was in the U.S. and Conbelleza was in Europe during the summer of 2019, Samantha could not ride Conbelleza, and she trusted Bluman to determine the horse's suitability (*Id.*).  Bluman confirmed at his deposition the importance of the trainer riding a horse to determine suitability for his student when the student is unavailable to do so (Ex. 2: 8/16/21 Bluman Tr. 175:8–13).

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 9

Below are July 27, 2019 WhatsApp messages between Bluman and Conbelleza's seller,

Simon Delestre, uncovered in the forensic examination of Bluman's cell phones:



Thus, on July 27, 2019, the same day as his message to Samantha Wight, Bluman sent a

WhatsApp message to Delestre stating: **"I told her [referring to Samantha] I rode the mare.  I**

**trust what you say.  She looks so easy and comfortable.  I don't need to drive to your place**

**to ride her."**  This message confirms that Bluman lied to Samantha when he messaged her the

same day indicating that he had previously ridden Conbelleza and determined her suitability.

 None of the above July 27, 2019 WhatsApp messages between Bluman and Delestre were

produced to Plaintiffs before the Court-ordered forensic examination of Bluman's cell phones.

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 10

These messages are covered at least by Plaintiffs' First Set of Requests to Produce No. 1, which requests that Defendants produce all communications concerning Conbelleza between Defendants and a list of individuals that includes Simon Delestre (Ex. 4 at pages 1–2).

**2.   Messages Confirming That Bluman Intentionally Violated Melissa's Wight's Instruction NOT to Engage the Seller's Vet to Conduct the Pre-Purchase Examination on Conbelleza**

The FAC alleges that Melissa Wight told Bluman not to use the seller's vet to conduct the PPE on Conbelleza; and that Bluman intentionally violated her instruction by permitting Simon Delestre's vet Dr. Vincent Goudin to carry out the PPE, unbeknownst to Plaintiffs.   These allegations underlie Counts I–V of the FAC (D.E. 42 at 1–201).

In the world of horse sales, it is standard industry practice that the buyer NOT use the seller's vet to conduct the PPE to avoid  bias and favoritism toward the seller.  Bluman admitted at his deposition that Melissa Wight expressly told him not to use the seller's vet to conduct Conbelleza's PPE (Ex. 2: 8/16/21 Bluman Tr. 204:6–12).  Bluman did not attend the PPE, but admitted that the seller, Simon Delestre, was present (*Id*. at Tr. 43:15–17).  As alleged in the FAC, Mr. Bluman never told Melissa Wight the name of the vet who conducted Conbelleza's PPE until November of 2019, months after the sale was completed (D.E. 42 at ¶¶ 65–68).

Below are July 27, 2019 WhatsApp messages between Bluman and Simon Delestre, retrieved by Disco from Bluman's cell phones, concerning the selection of Dr. Goudin:

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 11



The following August 1, 2019 and August 5, 2019 WhatsApp messages between Mr. Bluman and Simon Delestre also concern Dr. Goudin and Conbelleza's vetting, and were also retrieved during the forensic examination of Bluman's cell phones:

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 12



As shown above, Mr. Bluman wrote to Simon Delestre via WhatsApp on July 27, 2019: **"I need a vet to do a clinical exam in your mare. To send report and videos of the flexions and circles, etc to the client vet."** Delestre chose Dr. Goudin. Indeed, Dr. Goudin's PPE report on Conbelleza states that the examination was for "Mr. DELESTRE," which Bluman admitted means Simon Delestre (Ex. 2: 8/16/21 Bluman Tr. 225:3-11). The Bluman/Delestre August 1 and August 5, 2019 messages show that Delestre was Bluman's point of contact with Goudin. The

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
    Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 13

Bluman/Delestre WhatsApp messages confirm that Bluman allowed the seller's vet to conduct

Conbelleza's PPE in violation of Melissa Wight's express instructions.

None of the above messages between Bluman and Delestre concerning Dr. Goudin and

Conbelleza's PPE were produced to Plaintiffs before the Court-ordered forensic examination of

Bluman's cell phones. The messages are covered by at least the following requests in Plaintiffs'

First Set of Requests to Produce to Defendants: (1) Request No. 1, seeking all communications

concerning Conbelleza between Defendants and a list of individuals that includes Simon Delestre;

(2) Request No. 85, seeking all documents relating to the selection of Dr. Goudin to conduct

Conbelleza's PPE; and (3) Request No. 92, seeking all documents relating to the reasons why Dr.

Goudin's PPE report on Conbelleza states "Examination for Mr. DELESTRE" (Ex. 5 at 1).

### 3. Messages That Put the Lie to Defendants' Assertion That Dr. Gomez Selected Dr. Goudin to Conduct Conbelleza's PPE Because Gomez Was Unavailable

In an effort to shift the focus away from Bluman's complicity in the selection of Dr.

Goudin, Defendants have taken the position in this case that Goudin was actually selected by

Bluman's mentor and friend Dr. Jorge Gomez of Palm Beach Equine, because Dr. Gomez was

unavailable to conduct Conbelleza's PPE himself. As shown above, this is simply not true, because

Goudin was chosen by Simon Delestre in concert with Bluman. Moreover, the following July 27,

2019 WhatsApp message from Dr. Gomez to Bluman retrieved from Bluman's phone shows that

Dr. Gomez was in fact available to conduct Conbelleza's PPE:



**15613831410@s.whatsapp.net** Jorge
Gomez nuevo                                July 27, 2019 15:33:16

Manda a Combaleza a la finca de Paillot miércoles temprano. Yo le hago todo el examen ahí. Si q
ueres

Translation: Send Conbelleza to Paillot's farm early Wednesday. I will
perform the complete exam there, if you want.

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 14

   Rather than being unavailable, Dr. Gomez testified at his deposition that he was never asked to conduct Conbelleza's PPE (Ex. 6: 5/4/21 Gomez Tr. 96:1–12).  Dr. Gomez's July 27, 2019 WhatsApp message to Bluman was never produced to Plaintiffs before the forensic examination of Bluman's cell phones.  The message is covered by at least the following discovery requests to the Defendants: (1) Melissa Wight's Second Set of Requests for Admission, Nos. 222–224, relating to the selection of Dr. Goudin and Dr. Gomez's availability (Ex. 7 at page 5); (2) Plaintiffs' Request to Produce No. 68, seeking documents relating to Defendants' representations to Plaintiffs about Conbelleza's soundness (Ex. 4 at pages 20–21); (3) Plaintiffs' Request to Produce No. 85, seeking documents relating to the selection of Dr. Goudin (Ex. 4 at page 25); and (4) Plaintiffs' Request to Produce No. 89, seeking documents relating to instructions given to by Plaintiffs to Defendants concerning the selection of a vet for Conbelleza's PPE (Ex. 4 at page 26).

### 4. Messages Confirming that Bluman Acted as A Dual Agent in Connection with the Conbelleza Sale Without the Authority or Knowledge of Plaintiffs

   Another cardinal rule in the world of horse sales is that the purchasing agent must not act as a dual agent for both the buyer and the seller without the express written consent of both sides. Bluman was Plaintiffs' sole and exclusive agent in connection with the Conbelleza sale, and Plaintiffs never authorized him to act on behalf of the sellers. Count VII of the FAC alleges that Bluman acted as a dual agent in violation of Florida's Deceptive Trade Practices Act by keeping $40,000 of the $600,000 cash portion of the Conbelleza sale, without the knowledge of or authority from the Plaintiffs (D.E. 42 at ¶¶ 143–147, 207–215).  Bluman admitted at his deposition that he should not have kept at least $30,000 of the $40,000, but claimed he didn't know the money was in his account (Ex. 2: 8/16/21 Bluman Tr. 299:8-301:10).

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 15

For context, and as pled in the FAC, Bluman told Plaintiffs that the purchase price of Conbelleza was $600,000 plus the stallion Imagine VD Hermitage (valued at $600,000). These amounts are reflected on the Bills of Sale that Bluman prepared and gave the Wights as part of the transaction (D.E. 42 at ¶¶ 28, 92). WhatsApp messages retrieved from Bluman's cell phone show that his unauthorized dual agency was even more pervasive than Plaintiffs knew at the time the FAC was filed. The following July 27, 2019 WhatsApp messages between Bluman and Delestre retrieved from Bluman's phones show that he negotiated with Delestre for Plaintiffs to pay the sellers 500,000€ (approximately $560,000 at the time), and for Bluman to take Imagine VD Hermitage, sell him for as much as he could, give 50,000€ to Delestre, and keep the difference:



To that end, the WhatsApp messages retrieved by Disco further reveal that on August 7, 2019, Bluman described Imagine DV Hermitage to Delestre as "the horse *we* are taking in trade" (emphasis added) from Melissa Wight as part of the Conbelleza sale:

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 16



Retrieved WhatsApp messages exchanged between Bluman and his mother on August 26, 2019 reveal that, contrary to his deposition testimony (and unbeknownst to Plaintiffs), Bluman intended from the beginning to keep $40,000 from the Conbelleza sale for himself:



*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 17



Translation:
Orly: Euro at 1.12. You're left with $40000 of the $600k
Orly: I sent $627200 to Amex to make payments. Balance $278294.40
Daniel: Perfect
Daniel: Document everything the way it should be.
Daniel: Operation Hector
Daniel: And the other a commission
Orly: That's the way it was done; they should receive funds tomorrow.
Daniel: Perfect

*See also* messages between Bluman and his mother on August 9, 2020, included in Exhibit 3.

None of the above WhatsApp messages between Bluman and Delestre, or between Bluman and his mother, were produced to Plaintiffs before the forensic examination of Bluman's cell phones. These non-deleted messages are covered by at least Plaintiffs' Request to Produce Nos. 1 and 2, which requested that Defendants produce all communications regarding Conbelleza and Imagine VD Hermitage, respectively (Ex. 4 at pages 1–2).

### 5. Messages Demonstrating the Bluman Concealed from Plaintiffs That Conbelleza Tested Positive for a Serious Bloodborne Illness

As alleged in the FAC, Conbelleza was in Bluman's care in Europe during the six-week period between that completion of the sale and shipment of the horse to the U.S. (D.E. 42 at ¶ 45).

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 18

WhatsApp messages retrieved from Bluman's cell phone show that during this time frame, he was communicating extensively with multiple parties about the fact that Conbelleza tested positive for Dourine, a serious bloodborne illness. For example, on September 11, 2019, Bluman exchanged the following messages with Simon Delestre, asking Delestre to inquire of his vet if he had seen situations like this and how to handle them, and stressing that they "must find a solution for the blood," because, in Bluman's own words, "I want that horse for the client."



*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 19

None of these non-deleted WhatsApp messages between Bluman and Delestre were produced to Plaintiffs before the Court-ordered examination of Bluman's cell phones; and Bluman concealed from Plaintiffs the fact that Conbelleza had tested positive for Dourine. But for the forensic examination, Plaintiffs would not have known the truth.   Had Plaintiffs known of the positive Dourine test result, they would never have purchased this horse.

The above September 11, 2019 WhatsApp messages between Bluman and Delestre should have been produced, because they are  covered by at least: (1) Plaintiffs' Request to Produce No. 1, seeking all communications concerning Conbelleza between Defendants and a list of individuals including Simon Delestre; and (2) Plaintiffs' Request to Produce No. 17, seeking all communications concerning the custody, care, and maintenance of Conbelleza during the period between the completion of the sale and shipment of the horse to the U.S. (Ex. 4 at page 5).

### D. Plaintiffs Should be Awarded Their Expenses, Costs, and Attorneys' Fees Incurred in Connection with the Forensic Examination of Bluman's Cell Phones and the Related Motion Practice

Defendants violated their discovery obligations by failing to produce the 100's of relevant non-deleted WhatsApp messages retrieved from Bluman's cell phones by Disco.  Plaintiffs' counsel produced to Defendants all relevant electronic messages from Plaintiffs' cell phones early in discovery. Defendants' counsel should have done the same for Bluman's phones.  Incredibly, Defendants opposed Plaintiffs' motion for a forensic examination of Bluman's phones by accusing Plaintiffs of engaging in a "fishing expedition" (D.E. 52 at 2).  The 100's of non-deleted, responsive and relevant  electronic messages retrieved by Disco, however, show  that the contention of a "fishing expedition" was wrong.  ***Bluman gave false testimony*** in his April 14, 2021 sworn statement when he asserted that he deleted all electronic information "on a monthly basis" from his phone as a "business practice" until this lawsuit was filed.

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 20

Through the results of Disco's forensic work, we now know: (1) that Defendants' representations to Plaintiffs that Defendants have produced all relevant documents, and that no further documents existed because of Mr. Bluman's "business practice" of deleting electronic messages from his phones, were ***wrong***; and (2) that Defendants failed to do appropriate due diligence to determine what discoverable information Bluman had on his phones.  This is the essence of bad faith litigation and abuse of the discovery process. *See, e.g., Bernal v. All Am. Inv. Realty, Inc.*, 479 F.Supp.2d 1291, 1293–94, 1326–27 (S.D. Fla. 2007) (relying on client's word is not a reasonable investigation); *see also Latele Television, C.A. v. Telemundo Commc'ns Grp.*, LLC, No. 12-22539-CIV, 2014 WL 5816585, at *2, *4–*6, *10 (S.D. Fla. Nov. 10, 2014) ("[T]here is no doubt that these documents and the information about the transactions reflected in them were responsive to numerous discovery requests—and that [Latele] provided false discovery responses which hid the existence of the documents and the transactions").

In addition to this Court's Order [DE 76], an award of fees and costs is also appropriate under Fed. R. Civ. P. 37(c), because Defendants' failure to disclose these responsive documents when initially requested, or throughout December 2020–February 2021 while they strung Plaintiffs along, was not harmless. Plaintiffs had to spend considerable time and resources chasing down documents Defendants claimed had been deleted and could not be produced.

**WHEREFORE**, in accordance with this Court's August 8, 2021 Order, we request that Plaintiffs be permitted to submit an application for reimbursement by Defendants of Plaintiffs' costs, expenses, and attorneys' fees incurred: (1) in activities necessitating the motion practice leading to the Court-ordered forensic analysis of Bluman's cell phones; (2) in engaging Disco to forensically examine the phones; (3) in having Plaintiffs' counsel analyze the results of Disco's examination; and (4) in the present motion practice to recover fees and costs. Respectfully,

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
  Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 21

reimbursement to Plaintiffs of these costs  and fees is reasonable.   None of the activities in

connection  with  the  forensic  examination  in  the  foregoing  items  (1)–(4)  would  have  been

necessary  had  Defendants'  complied  with  their  discovery  obligations,  and  produced  all

discoverable information from Bluman's cell phones responsive to Plaintiffs' discovery requests.

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), undersigned counsel for

Plaintiffs certifies that they have conferred with counsel for Defendants in a good faith effort to

resolve the issues raised by the Motion after exchanging correspondence beginning November 18,

2021, but the Parties were unable to reach an agreement despite discussing these matters via zoom

for approximately 40 minutes, and with additional correspondence thereafter.

Dated:  November 30, 2021                    Respectfully submitted,

                                             */s/  Vanessa Palacio*
                                             C. WADE BOWDEN, B.C.S.
                                             Florida Bar No. 90735
                                             bowdenw@gtlaw.com
                                             VANESSA PALACIO
                                             Florida Bar No. 98054
                                             palaciov@gtlaw.com
                                             **GREENBERG TRAURIG, P.A.**
                                             777 S. Flagler Drive, Suite 300E
                                             West Palm Beach, FL  33401
                                             Telephone: (561) 650-7922
                                             Facsimile: (561) 838-8823

                                             MICHAEL A. NICODEMA
                                             *Admitted Pro Hac Vice*
                                             **GREENBERG TRAURIG, LLP**
                                             500 Campus Drive, Suite 400
                                             Florham Park, New Jersey 07932
                                             Telephone: (973) 360-7900
                                             Facsimile: (973) 301-8410
                                             nicodemam@gtlaw.com

                                             *Counsel for Plaintiffs Melissa Wight and*
                                             *Samantha Wight*

*Wight v. Bluman*
CASE NO.: 9:20-cv-81688-Reinhart
Plaintiffs' Motion for Fees and Costs Related to Forensic
   Examination of Phones, Pursuant to D.E. 76 and Fed. R. Civ. P. 37(c)
Page 22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 30, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/  Vanessa Palacio*